IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHAEL SANTOS,      :
  Plaintiff,       :
           :
  v.         :   **CIVIL ACTION NO. 25-CV-6329**
           :
WARDEN JEFFREY SMITH, *et al.*, :
  Defendants.     :

**MEMORANDUM**

**PEREZ, J.**               **APRIL 1, 2026**

Plaintiff Michael Santos, a pretrial detainee incarcerated at Berks County Jail ("BCJ"), alleges that he was subjected to verbal harassment (some of a sexual nature) and retaliation, primarily in the form of misconduct charges that led to his placement in disciplinary confinement in inhumane conditions. The Court previously granted Santos leave to proceed *in forma pauperis*, screened his Complaint pursuant to 28 U.S.C. § 1915(e), and dismissed all claims except for those pertaining to the conditions of a cell where he served a ten-day disciplinary sentence. *Santos v. Berroa*, No. 25-6329, 2026 WL 184266, at *17 (E.D. Pa. Jan. 23, 2026). Santos was given the option of filing an amended complaint or proceeding the on claims that survived screening. (ECF No. 10 at 3.) He chose to file an Amended Complaint, which raises claims pursuant to 42 U.S.C. §1983 and Pennsylvania law. (Am. Compl. (ECF No. 12) at 14; ECF No. 13 at 4-5.) The Court will dismiss the Amended Complaint without prejudice to Santos filing a second amended complaint that is limited in scope.

I.  **FACTUAL ALLEGATIONS**

The relevant allegations are taken from Santos's Amended Complaint and attachments, (ECF Nos. 12 & 13), which supersede his initial Complaint. *See Garrett v. Wexford Health*, 938

F.3d 69, 82 (3d Cir. 2019) ("[A]n amended pleading supersedes the original pleading and renders the original pleading a nullity." (citations omitted)).  This means the Court will only consider the Amended Complaint and attachments to the Amended Complaint in determining whether Santos has stated a claim.[1]  *Argentina v. Gillette*, 778 F. App'x 173, 175 n.3 (3d Cir. 2019) (*per curiam*) (explaining that "liberal construction of a *pro se* amended complaint does not mean accumulating allegations from superseded pleadings.").  Although Santos was directly instructed to "include all factual allegations," *Santos*, 2026 WL 184266, at *17, in any amendment and "not to repeat or duplicate allegations (as he did in his initial Complaint)," (ECF No. 10 at 3), the Amended Complaint provides less context and detail than Santos's initial Complaint and is disjointed and duplicative at times.  It is nevertheless apparent from a comparison of the two pleadings that they are based on essentially the same events.

As in the initial Complaint, the Amended Complaint alleges Santos was subjected to verbal harassment and retaliation that "heightened" his mental health, resulting in "physical harm."  (Am. Compl. at 13.)  Beginning in September 2025, Officer Berroa allegedly "subjected [Santos] to sexualized comments, homophobic slurs, and threats in front of other inmates, placing [him] at risk of violence and stigma."  (*Id*. at 15.)  In the initial Complaint, Santos described this incident with Berroa as having taken place following a unit inspection that revealed Santos possessed combs with missing teeth, which he admitted to using to cut hair on the unit.  *Santos*, 2026 WL 184266, at *2.  The Amended Complaint likewise alleges that Santos was issued two "unit actions," one for possessing altered combs and a second for threatening staff, resulting in eight days of lost tablet privileges.  (Am. Compl. at 15.)  In contrast to the

---

[1] The Court adopts the pagination the CM/ECF docketing system has provided for Santos's submissions.

initial Complaint, however, the Amended Complaint does not describe Santos's conversations or interactions with Berroa, or state the specific words used to "harass" him. (*Id.*) Rather, Santos vaguely alleges that Berroa "made a statement" that caused Santos to question him "about a unit action for [broken] combs," *i.e.*, he asked Berroa "a question to his question about . . . wanting to fight an inmate." (*Id.*) Santos alleges that he "was the only inmate being [threatened], belittled, [and] humiliated" and that the incident caused him embarrassment and "resurfaced trauma of violence he endured in his life." (*Id.*) He does not state any other details.

Santos filed "PREA complaints and grievances" about the incident. (*Id.*) He also filed "multiple" other grievances against Berroa and Correctional Officer Wertz, "along with other Defendants named," although he does not specify the dates or subjects of those grievances. (*Id.* (capitalization omitted).) He claims that he "began to feel oppressed, [retaliated against], and fearful" for having filed grievances and the PREA report. (*Id.* at 16.)

For instance, Santos claims Wertz and Correctional Officer Cancel retaliated against him by "fabicat[ing] a misconduct" charging him with harassment and threats, even though other inmates "were doing the same thing" because he asked to speak to a "higher up" on the occasion in question. (*Id.*) He claims to have been falsely accused of stating, "[t]here are 60 of us 1 of you." (*Id.*) He does not provide additional details. Santos alleges he pled guilty to the disciplinary charges under "duress" because he wanted to keep his job and avoid transfer to the segregation unit. (*Id.*) Santos next claims Correctional Officer Kissinger filed an unspecified misconduct against him, the circumstances of which are not alleged, because Kissinger felt that Santos "got off easy" in the prior incidents. (*Id.*) These events caused Santos to experience "fear based stressed responses, nausea when exposed to triggers, fatigue from depression, psychological distress and related symptoms of mental health triggering physical harm." (*Id.*)

3

Santos received Kissinger's misconduct while using the bathroom and claims he was not permitted sufficient time to finish cleaning himself before he was sent to the segregation unit. (*Id.* at 20.)  When Santos was sent to segregation, Correctional Officer Drozdak discarded certain of his property including commissary, sneakers, and prescription glasses.  (*Id.* at 25.)  When he arrived at the segregation unit, he was strip searched by Correctional Officer Claudio and placed in cell D-218 with a cell mate.  (*Id.* at 16, 19.)

Santos "advised Defendants from segregation [including a Jane Doe psychologist] of his mental health and his fear of having a cell mate in such little confined space." (*Id.* at 16, 19.)  He describes cell D-218 as,

> covered in feces on the bunks, on the walls, doors and also caked up feces and urine along the inner toilet and along the walls from the sewage, clogged sink, extreme cold, constant illumination, no desk to eat on, and no adequate cleaning supplie[s], vent throws out dust and also caked up with tissue and debris causing nose bleeds, dryness of the nasal.

(*Id.* at 16; *see also id.* at 19.)  As a result of the conditions, Santos claims to have experienced nausea, vomiting, weight loss (fourteen pounds in ten days), insomnia, panic attacks, chest pain, and "psychological decompensation." (*Id.* at 16, 19.)  He was housed in cell D-218 from November 1, 2025, through November 10, 2025.  (*Id.* at 17.)  Santos claims that he "personally showed" Sgt. Nolf, Sgt. Levan, and Warden Smith—presumably the conditions though he does not say so—but "despite actual knowledge from supervisors no corrective action was taken." (*Id.* at 17, 20.)  He also claims that Correctional Officers Ramirez, Claudio, Graff, Bitinger, Conrad and others, "ignored" his complaints "even after knowing the harm it was causing," and that Warden Smith directed him to the grievance process even though Santos explained that his requests were being ignored.  (*Id.* at 19, 20.)

4

Santos next claims that on December 10, 2025, Defendant Lt. Nemeth "as a PREA coordinator classified [his] complaint [*i.e.*, the one against Berroa] as 'harassment' despite acknowledging it was sexual in nature and failed to conduct a meaningful investigation." (*Id.* at 17.)  According to Santos, this "misclassification" of his complaint allowed the retaliation against him to continue "unchecked." (*Id.*)

Between December 18, 2025, and January 2, 2026, Santos was denied minipres, a medication, for his PTSD and nightmares, because Suzy Roberts "neglect[ed] to make sure all medications were inventoried and stocked." (*Id.*)  He contends that "Primecare staff neglected mental health and failed to keep all medications stocked" even though there had been a death by suicide at the facility. (*Id.*)  Santos experienced anxiety, pain, disruptions in sleep and eating, and "mental breakdowns" from being denied medication during this time. (*Id.*)  He also claims to have "repeatedly notified" "supervisory defendants" through "grievances, PREA reports, and appeals" and claims those Defendants "failed to train and intervene." (*Id.*)  Relatedly, he contends that Primecare Staff, including Roberts, "were aware but failed to provide treatment or alternative." (*Id.* at 18.)

Santos brings assorted constitutional claims pursuant to 42 U.S.C. § 1983, as well as claims under Pennsylvania law, based on these events. (*See* Am. Compl. at 14.)  He asserts Fourteenth Amendment due process claims and First Amendment retaliation claims.[2] (*Id.* at 14,

---

[2]  To the extent Santos invokes the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA"), (Am. Compl. at 22; ECF No. 13 at 5), he has not alleged any basis for a disability discrimination claim because nothing in the Amended Complaint suggests that he was denied access to services or otherwise discriminated against *because of* a disability, *see Santos*, 2026 WL 184266, at *5 at n.7 (citing *Kokinda v. Pa. Dep't of Corr.*, 779 F. App'x 944, 950 (3d Cir. 2019) (*per curiam*); then citing *Kokinda v. Pa. Dep't of Corr.*, 663 F. App'x 156, 159 (3d Cir. 2016) (*per curiam*); then citing *Nunez v. Prime Care Health, Inc.*, No. 19-0859, 2019 WL 1400466, at *1 n.3 (E.D. Pa. Mar. 27, 2019).  Further, Santos cannot state a claim under PREA, (Am. Compl. at 15), to the extent he seeks to do so, because the PREA contains no

23-24; *see also* ECF No. 13 at 4.)  In support of his retaliation claims, he generally contends that he filed grievances, complained of his conditions of confinement, and requested medical and mental health care, and that several events occurred thereafter, including harassment, "[t]hreatened discipline," "[t]argeted punishment," fabricated misconduct charges, demotion at his kitchen job, and verbal abuse.  (Am. Compl. at 18; *see also id.* at 21.)  He seeks millions of dollars in damages, unspecified declaratory relief, and injunctive relief pertaining to the conditions and training at BCJ.  (*Id.* at 23, 28.)

## II.    STANDARD OF REVIEW

Since Santos is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B) requires the Court to dismiss his Amended Complaint if, among other things, it fails to state a claim.  This standard requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v.*

---

private right of action, *Santos*, 2026 WL 184266, at *5 at n.7 (citing *Bowens v. Emps. of the Dep't of Corr.*, No. 14-2689, 2016 WL 3269580, at *3 (E.D. Pa. June 15, 2016), *aff'd, Bowens v. Wetzel*, 674 F. App'x 133, 137 (3d Cir. 2017); then citing *Krieg v. Steele*, 599 F. App'x 231, 232 (5th Cir. 2015).  Additionally, since Santos was a pretrial detainee at the time of the events in question, the Fourteenth Amendment, rather than the Eighth Amendment, (*see* Am. Compl. at 21), governs his conditions-of-confinement claims, as previously explained to him, *Santos*, 2026 WL 184266, at *5 at n.7 (citing *Hubbard v. Taylor*, 399 F.3d 150, 165-66 (3d Cir. 2005)).  He has also failed to state an Equal Protection claim, (Am. Compl. at 24), based on BCJ's failure to offer Spanish-language television and legal resources.  *See Francisco v. N.J. Dep't of Corr.*, No. 23-22775, 2025 WL 1540587, at *7 (D.N.J. May 30, 2025) (dismissing equal protection claim based on prison official's failure to provide resources for Spanish speakers); *Little v. Terhune*, 200 F. Supp. 2d 445, 455-56 (D.N.J. 2002) ("Equal protection is not a vehicle for courts' supplanting the allocational priorities of prison administrators, which effectively is what plaintiff would have this court attempt."); *Pabon v. McIntosh*, 546 F. Supp. 1328, 1340 (E.D. Pa. 1982) (Shapiro, J.) (rejecting claim "that offering courses only in English constitutes disparate treatment of prisoners speaking only Spanish who are in effect deprived of various educational and vocational programs in violation of the Fourteenth Amendment").  Accordingly, the Court will dismiss all claims based on the ADA, the RA, PREA, the Eighth Amendment, and the Equal Protection Clause.

*Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Conclusory allegations do not suffice. *Id.* at 678. As Santos is proceeding *pro se*, the Court

construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala*

*v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). However, "pro se litigants

still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704

F.3d at 245). An unrepresented litigant "cannot flout procedural rules—they must abide by the

same rules that apply to all other litigants." *Id.* (quoting *Mala*, 704 F.3d at 245); *see also Doe v.*

*Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) (*per*

*curiam*) (explaining that liberal construction of *pro se* pleadings "does not require the court to act

as an advocate to identify any possible claim that the facts alleged could potentially support").

This includes compliance with Federal Rule of Civil Procedure 8, which requires that the

pleading contain a "short and plain statement showing that the pleader is entitled to relief,"

accompanied by a statement of the court's jurisdiction and a demand for the relief sought. Fed.

R. Civ. P. 8(a). Each averment must be "simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

Together, Rules 8(a) and 8(d)(1), should be construed to "underscore the emphasis placed on

clarity and brevity by the federal pleading rules." *In re Westinghouse Sec. Litig.*, 90 F.3d 696,

702 (3d Cir. 1996) (quotations and citation omitted). In assessing Rule 8's "plain" statement

requirement, the Court should "ask whether, liberally construed, a pleading 'identifies discrete

defendants and the actions taken by these defendants' in regard to the plaintiff's claims."

*Garrett*, 938 F.3d at 93 (quotations and citation omitted). "Naturally, a pleading that is so 'vague

or ambiguous' that a defendant cannot reasonably be expected to respond to it will not satisfy

Rule 8." *Id.* (quoting *Schaedler v. Reading Eagle Publ'n, Inc.*, 370 F.2d 795, 799 (3d Cir. 1967))

(additional citation omitted). The important consideration for the Court is whether "a pro se

complaint's language . . . presents cognizable legal claims to which a defendant can respond on the merits." *Id.* at 94 (citations omitted). "This standard operates in tandem with that of Rule 10," which requires that a pleading contain a caption with the Court's name and the names of the parties, and that claims be listed in numbered paragraphs. *Fabian v. St. Mary's Med. Ctr.*, No. 16-4741, 2017 WL 3494219, at *3 (E.D. Pa. Aug. 11, 2017) (citing Fed. R. Civ. P. 10). Furthermore, the Court must dismiss any claims over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Grp. Against Smog and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*" (citations omitted)).

## III.    DISCUSSION

The vehicle by which federal constitutional claims may be brought in federal court is an action under 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted). As noted, to satisfy the pleading standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, meaning a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to his claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998). As the Court previously explained to Santos, "a complaint must

8

provide factual details about what each defendant did, including sufficient information about when, where, and under what circumstances the relevant events took place, to both put the defendants on notice of what they are accused of doing and to support the necessary elements of a claim." *Santos*, 2026 WL 184266, at *6.

### A. Pleading Deficiencies and Lack of Personal Involvement

Although the Court explained the applicable procedural and legal standards governing Santos's claims when screening his initial Complaint, his Amended Complaint is less clear and complete than his initial Complaint. It omits key details about the events giving rise to his claims—including what specifically occurred, who was involved, and when the events happened—repeats allegations, and is not well organized, making it difficult to follow what he is trying to say. Additionally, although the Court instructed Santos to "identify all defendants in the caption of [any] amended complaint in addition to identifying them in the body of the amended complaint," (ECF No. 10 at 3), it is not clear from the Amended Complaint whom Santos intends to name as Defendants.

In the caption of his Amended Complaint, Santos identifies Warden Jeffrey Smith and refers to an "attachment." (Am. Compl. at 1.) In the portion of the form complaint used by Santos that asks for information about defendants, he lists Warden Jeffrey Smith, Deputy Warden Stephanie Smith, Deputy Warden Tassone, and Berks County as Defendants without referring to any additional pages. (*Id.* at 2-3.) An additional paper titled "DEFENDANTS" lists the following: Warden Jeffrey Smith; Deputy Wardens Stephanie Smith, Tassone, and Roberts; Lt. Nemeth; Sgts. Gorel and Levan; Correctional Officers Wertz, Cancel, Berroa, Kissinger, Drozdak, Ramirez, Claudio, Graff, Hartzel, Johnson, and "john doe officers responsible for [Santos's] hardships between Nov 1-Nov 10, 2025"; Berks County Jail Board and

Commissioners; and Supervisor Suzy Roberts.  (*Id.* at 12.)  Yet another portion of Santos's submission describes defendants and refers to individuals and entities not previously identified, namely, Lt. Marshall, "Jane DOE Psych," "Primecare medical department at BCJ," and "Primecare psych department at BCJ."  (*Id.* at 14.)  Sgt. Nolf is referred to elsewhere in the pleading as if he is a Defendant.  (*Id.* at 17.)  And another portion of Santos's submission describing the parties lists the Defendants as:  Correctional Officers Kissinger, Ramirez, Drozdak, Claudio, and Graff; Warden Jeffrey Smith; Deputy Wardens Tassone, Roberts, and Smith; Berks County, and the Berks County Commissioners.  (*Id.* at 20.)  Officers Conrad and Bitinger are also mentioned throughout Santos's allegations.  (*Id.* at 19, 25.)

Finally, an attachment to the Amended Complaint that Santos initially forgot to include lists the following Defendants:  Berks County; Primecare Inc.; Warden Jeffery Smith; Deputy Wardens Stephanie Smith, Roberts, and Tassone; Lts. Marshall, Nemeth, and Johnson; Sgts. Levan, Gorel and Akers (who was not previously listed in the Amended Complaint); Correctional Officers Wertz, Berroa, Drozdak, Cancel, Ramirez, Graff, Claudio, Kissinger, and Hartzel; Suzy Roberts; a Jane Doe "psych" employee of Primecare; and H. Laky LPN (another individual listed for the first time).  (ECF No. 13 at 1-3.)  The attachment also includes claims against the Berks County Jail and "Berks County Jail Prison Board."  (*Id.* at 6.)

Having thoroughly reviewed Santos's submission, the Court cannot say with certainty who the defendants are in this case.  And since it is difficult to discern the identities of the defendants, it is also difficult to discern which individuals or entities are alleged to have engaged in which conduct, especially considering that Santos complains of many incidents, events, and conditions.  That difficulty is made worse by the fact that Santos has pled his claims in a vague and generalized manner, for instance, speaking generally in terms of harassment, retaliation, and

10

failure to train rather than providing specific facts about who did what, when they did it, and how those events fit into the relevant timeline. These ambiguities and other pleading failures are fatal to Santos's claims. Although the Court must construe Santos's Amended Complaint liberally, it cannot construct his claims for him or reorganize his pleading. *See Mala*, 704 F.3d at 246 ("[P]ro se litigants do not have a right—constitutional, statutory, or otherwise—to receive how-to legal manuals from judges." (citation omitted)). In sum, the Amended Complaint is too unclear, disorganized, and duplicative for any possible defendants to understand what claims are brought against them or to respond in a meaningful way. However, the Court has nevertheless done its best to identify Santos's claims to determine whether any of them have merit. In doing so, the Court has not incorporated facts alleged in superseded pleadings but has looked to the initial Complaint for context to better understand what claims Santos intends to bring and to determine whether there is a plausible basis for a constitutional violation.

## B. Harassment

As before, *Santos*, 2026 WL 184266, at *7, Santos claims he was verbally and sexually harassed during his incarceration, (*see* Am. Compl. at 12, 15). In addressing Santos's initial Complaint, the Court explained that verbal harassment, including that of a sexual nature, does not violate the constitution unless it amounts to an "objectively serious deprivation." *Santos*, 2026 WL 184266, at *7 (citing *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007)). The Amended Complaint alludes to verbal and sexual harassment but does not actually describe what was said to Santos. In contrast, the initial Complaint, which did describe these conversations, fell short of stating a claim. *See id.* at *8. Since the Amended Complaint is even less detailed, it too fails to state a claim based on any verbal or sexual harassment Santos experienced at BCJ. *Id.* (collecting cases analyzing verbal and sexual harassment through a constitutional lens).

11

### C. Misconducts, Demotion, and Lost Property

The Court also understands Santos to reassert due process claims based on disciplinary sanctions imposed against him. (Am. Compl. at 15-16.) As previously explained in more detail, a pretrial detainee who is sanctioned for disciplinary violations is entitled to minimal process including "the right to receive written notice of the charges at least 24 hours before the hearing, the opportunity to present witnesses and documentary evidence, and a written statement of the reasons for the disciplinary action taken and the supporting evidence." *Santos*, 2026 WL 184266, at *9 (quoting *Kanu v. Lindsey*, 739 F. App'x 111, 116 (3d Cir. 2018); then citing *Stevenson,* 495 F.3d at 70-71). "[T]he filing of a fraudulent misconduct report and related disciplinary sanctions do not without more violate due process," *Seville v. Martinez*, 130 F. App'x 549, 551 (3d Cir. 2005) (*per curiam*) (citation omitted), because "[d]ue process is satisfied where an inmate is afforded an opportunity to be heard and to defend against the allegedly false misconduct reports," *Thomas v. McCoy*, 467 F. App'x 94, 97 (3d Cir. 2012) (*per curiam*) (citation omitted); *see also Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002) ("[S]o long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim." (citation omitted)).

Santos generally claims he was given "fabricated" misconducts, (Am. Compl. at 16), but he does not allege that he was denied the ability to defend against those alleged misconducts and, notably, the more detailed allegations of his initial Complaint reflected that he was given such an opportunity, *Santos*, 2026 WL 184266, at *10. Further, as previously explained, the loss of tablet privileges for a short period of time is "a *de minimis* deprivation that does not implicate the constitution." *Id.* at *9 (footnote omitted) (collecting cases). In sum, Santos's Amended

Complaint fails to state a due process claim based on the disciplinary sanctions he received for the same reasons the Court dismissed these claims from the initial Complaint. *See id.* at \*9-10.

Similarly, to the extent Santos is reasserting due process claims based on his demotion at his prison job or the destruction of his property, those claims fail for the same reasons the Court previously dismissed them. *Id.* at \*10-11. Santos cannot state a due process claim based on his demotion because "[i]nmates do not have a liberty or property interest in their job assignments that would give rise to Due Process Clause protection." *Watson v. Sec'y Pa. Dep't of Corr.*, 567 F. App'x 75, 78 (3d Cir. 2014) (*per curiam*) (citing *James v. Quinlan*, 866 F.2d 627, 629-30 (3d Cir. 1989))); *Fiore v. Holt*, 435 F. App'x 63, 68 (3d Cir. 2011) (*per curiam*) ("[P]risoners enjoy no protected interest in prison employment." (citing *James*, 886 F.2d at 629-30)). Nor can Santos state a due process claim based on the destruction of his property since a correctional facility's grievance procedure and Pennsylvania law provide adequate postdeprivation remedies for intentional deprivations of property by correctional employees. *Tillman v. Lebanon Cnty. Corr. Facility,* 221 F.3d 410, 422 (3d Cir. 2000) (holding that prison grievance system provides adequate post-deprivation remedy); *Hernandez v. Corr. Emergency Response Team*, 771 F. App'x 143, 145 (3d Cir. 2019) (*per curiam*) ("Even if the prison grievance procedures could be considered constitutionally inadequate, Pennsylvania's state tort law would provide an adequate remedy." (citing 42 Pa. Cons. Stat. Ann. § 8522(b)(3))).

### D. Retaliation

Santos reasserts his retaliation claims, characterizing much, if not all, of the way he has been treated at BCJ as retaliatory. (*See, e.g.*, Am. Compl. at 15-16.) As previously explained, "[t]o state a plausible First Amendment retaliation claim, a prisoner must allege that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to

deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was 'a substantial or motivating factor' for the adverse action." *Santos*, 2026 WL 184266, at \*13 (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); then citing *Watson v. Rozum*, 834 F.3d 417, 422-23 (3d Cir. 2016)).  "A prisoner's filing of a grievance or PREA complaint or expressing an intent to do so constitutes constitutionally protected conduct."  *Id.* (citing, *inter alia*, *Watson*, 834 F.3d at 422-23).  "In contrast, 'backtalk by prison inmates to guards, like other speech that violates prison discipline, is not constitutionally protected.'"  *Id.* (quoting *Kervin v. Barnes*, 787 F.3d 833, 835 (7th Cir. 2015)).  An adverse consequence must be more than *de minimis* and includes being issued misconduct charges or placed in segregated housing.  *Id.* (citing *Watson*, 834 F.3d at 423; then citing *Palmore v. Hornberger*, 813 F. App'x 68, 70 (3d Cir. 2020) (*per curiam*)).  "To establish the requisite causal connection a plaintiff usually must [allege] either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link."  *Id.* (quoting *Ruttle v. Brady*, No. 22-3000, 2023 WL 5554648, at \*2 (3d Cir. Aug. 29, 2023)).

Although Santos adequately alleged that he engaged in protected conduct, most notably by filing grievances and a PREA complaint, he has not pled a plausible retaliation claim. Initially, to the extent Santos alleges that he experienced unspecified verbal harassment as a form of retaliation, (Am. Compl. at 18), he has not alleged an adverse action, *see Santos*, 2026 WL 184266, at \*14 (discussing case law).  To the extent he alleges adverse action in the form of false misconduct charges, discipline, and demotion at his prison job, (Am. Compl. at 18; *see also* ECF No. 13 at 4), he has not alleged sufficient facts to support an inference that these actions were close in time to a protected activity, part of a pattern of antagonism, or otherwise motivated by

14

retaliation.  While Santos uses the terms "temporal proximity and retaliatory statements," (*id.*), these legal conclusions alone cannot make his claims plausible.  As noted above, to state a claim, Santos must support such legal conclusions with facts, but he has not done so in that he has not clearly linked his protected activity to the claimed adverse actions in a manner suggestive of retaliation.  *See Wallace v. Pa. Dep't of Corr.*, No. 24-152, 2025 WL 1568665, at *7 (W.D. Pa. June 3, 2025) ("Using the word 'retaliation' or some form thereof does not allege retaliation.").  To the contrary, as previously noted, his Amended Complaint is pled in a disjointed manner, making it difficult to understand when a given grievance was filed, who had reason to know about any such grievance, when the allegedly adverse consequences occurred relative to the grievances that were filed, and what other facts, if any, suggest that any given Defendant acted with a retaliatory motive.  These specific facts are important, especially given the numerous conditions and grievances alluded to in the Amended Complaint.  For these reasons, and the reasons previously given by the Court in addressing these claims when screening Santos's initial Complaint, *Santos*, 2026 WL 184266, at *13, the Court will dismiss Santos's retaliation claims, *see, e.g.*, *Fritz v. County of Westmoreland*, No. 22-2999, 2024 WL 808970, at *3 (3d Cir. Feb. 27, 2024) (affirming dismissal of First Amendment retaliation claim where plaintiff's allegations as to causation were conclusory and speculative); *Miller v. Metzger*, No. 21-2223, 2022 WL 4820322, at *2 (3d Cir. Oct. 3, 2022) (*per curiam*) (affirming dismissal of First Amendment retaliation claim where plaintiff failed to provide sufficient factual matter showing that alleged protected activity was a substantial or motivating factor in the decision to discipline him); *McGinnis v. Hammer*, 751 F. App'x 287, 292 n.2 (3d Cir. 2018) (*per curiam*) ("McGinnis' conclusory allegation that his grievance was a substantial motivating factor in Hammer's decision to deny ibuprofen fails to reflect more than a sheer possibility that a defendant has acted

15

unlawfully." (quotations and citation omitted)); *Oliver v. Roquet*, 858 F.3d 180, 195 (3d Cir. 2017) ("Absent supporting facts that make it reasonable to draw an inference of retaliation, these conclusory assertions of a cause-and-effect relationship between specific protected activities and a later adverse action are insufficient to plead causation." (citations omitted)).

### E.  Conditions in Disciplinary Segregation

Santos reasserts due process claims based on the conditions of the cell where he was housed for ten days in disciplinary segregation, from November 1, 2025, through November 10, 2025.  (*See* Am. Compl. at 16-17, 19.)  As previously explained, "[p]rison officials have a constitutional duty to provide humane conditions of confinement, including adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates."  *Santos*, 2026 WL 184266, at *10 (citing *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994)).  "Unconstitutional punishment typically includes both objective and subjective components."  *Stevenson*, 495 F.3d at 68.  "[T]he objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind."  *Id.* (cleaned up).  To satisfy the subjective component of the analysis, a prisoner generally must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety.  *See Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991); *see Edwards v. Northampton County*, 663 F. App'x 132, 135 (3d Cir. 2016) (*per curiam*) ("[W]e agree with the District Court and find no reason to apply a different standard here as we have applied the 'deliberate indifference' standard both in cases involving prisoners and pretrial detainees." (internal citations omitted)).  Courts "look at the totality of the conditions" in assessing conditions-of-confinement claims.  *Tillery v. Owens*, 907 F.2d 418, 426 (3d Cir. 1990); *see also*

16

*Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 326 (3d Cir. 2020) (in assessing whether conditions amount to unconstitutional punishment of detainees, courts "consider the totality of the circumstances of confinement, including any genuine privations or hardship over an extended period of time" (citations omitted)).

The Court previously concluded, in screening Santos's initial Complaint, that he alleged a plausible basis for a due process violation given his allegations "that his cell was smeared with feces and his toilet was caked with feces, that he was not provided with supplies to adequately clean it, and that it smelled so bad he was unable to eat, causing him to lose fourteen pounds in ten days," as well as his allegation that he could not sleep due to constant brightness of the cell. *Santos*, 2026 WL 184266, at *11 (discussing relevant case law). Given that Santos describes the same conditions and hardships, the Court again concludes that he has pled objectively serious conditions in disciplinary segregation for purposes of his due process claim. However, because of the confusing manner in which Santos has pled his claims, *see supra*, § III.A, the Court is unclear which Defendants Santos brings these claims against, including the specific factual basis for liability of any Defendant. Simply saying that a Defendant "knew" about the conditions or "ignored" the conditions, without explaining how they knew, what they said (if anything), and what interactions Santos had with each of the relevant Defendants is insufficient to plead deliberate indifference, especially given the large number of potential defendants included in the Amended Complaint. *Rode*, 845 F.2d at 1207 ("Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." (citations omitted)); *Roman v. County of Hudson*, No. 23-2811, 2024 WL 1757150, at *7 (D.N.J. Apr. 23, 2024) ("[I]n addition to the group pleading problem, Plaintiffs fail to allege a factual basis to support their conclusory allegations. Facially, the amended complaint does not articulate a plausible

17

claim for relief against any defendant, including the Individual Defendants, under a theory of personal involvement, as the allegations are made without particularity.")  Since the Amended Complaint is unclear on these points, the Court will dismiss Santos's claims based on the conditions of cell D-218 because they cannot proceed as pled.[3]

### F.  Deliberate Indifference to Medical Needs

Santos's claims that he was denied mental health treatment are also governed by the deliberate indifference standard, which requires him to allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.  *See Farmer*, 511 U.S. at 835.  "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (quotations and citations omitted).  Deliberate indifference in this context is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment."  *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (citations omitted).  Allegations of medical malpractice and mere disagreement regarding proper medical treatment are

---

[3] Santos has also failed to state a claim based on his allegation that he was strip searched when he was transferred from general population to the segregation unit.  *See generally Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318, 328 (2012) (explaining that "correctional officials must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities" (citation omitted)).  Santos's undeveloped allegations do not support a plausible inference that searching him at the time of the transfer was unreasonable.  *See Eby v. Karnes*, No. 19-2069, 2020 WL 1550634, at *5 (M.D. Pa. Apr. 1, 2020) ("Plaintiff's allegation that the strip search was demeaning and embarrassing is insufficient to maintain a constitutional claim." (citations omitted)).

insufficient to establish a constitutional violation.  *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).

Santos has again failed to develop his allegations that he was denied mental health attention when he was housed in the segregation unit for ten days.  It is not clear from the Amended Complaint what specific care Santos claims he required and was denied during this time.  He alleges that he told certain Defendants about "his mental health" and expressed "fear of having a cell mate in such little confined space," (Am. Compl. at 16), but the fact that he was housed with a cell mate does not amount to deliberate indifference.  Nor is there any other basis for inferring deliberate indifference to Santos's mental health needs based on the denial of any unspecified treatment for his mental health, including Lt. Nemeth's alleged failure to initiate a mental health check following a conversation with Santos after he just took his mental health medication.  (ECF No. 13 at 1, 3); *see also Santos*, 2026 WL 184266 at *12.

Santos's denial of care claim is clearer with regard to his allegation that between December 18, 2025, and January 2, 2026, he did not receive minipres, a medication that had been prescribed for certain of his psychological conditions, because it was not in stock.[4]  (Am. Compl. at 17.)  He attributes this to Suzy Roberts, a supervisor with Primecare, "neglecting to make sure all medications were inventoried and stocked." (*Id.*)  This undeveloped allegation, however, is at most indicative of negligence, rather than deliberate indifference.  *See Woodell v. Wenerowicz*, No. 18-1098, 2019 WL 4139264, at *20 (E.D. Pa. Aug. 30, 2019) ("[D]elays in obtaining medication is 'at most, evidence of negligence, which does not constitute deliberate indifference[.]'" (quoting *Puksar v. Hoffman*, No. 98-5832, 2000 WL 14469, at *3 (E.D. Pa. Jan.

---

[4] This allegation was not included in Santos's initial Complaint because it occurred after the initial Complaint was filed.

19

7, 2000))); *see also Welch v. County of Burlington*, No. 21-4526, 2021 WL 3418680, at *8 (D.N.J. Aug. 5, 2021) ("Plaintiff must plead additional facts to establish that deliberate indifference by staff led to his deprivation of prescribed seizure medication." (citation omitted)). Santos has not alleged facts that would give rise to an inference of deliberate indifference regarding his medication and, to the contrary, relies mostly on undeveloped, conclusory assertions. (*See, e.g.*, Am. Compl. at 18.) Accordingly, he has not "nudged [his] claims across the line from conceivable to plausible," so the Court will dismiss his deliberate indifference claims. *See Twombly*, 550 U.S. at 570.

### G. Grievances

Several of Santos's claims are based on prison officials' alleged failure to respond to or investigate the grievances and PREA complaint he filed. (Am. Compl. at 25; *see also id.* at 29-31; ECF No. 13 at 1.) As previously explained, "any alleged failures in responding to or investigating grievances do not give rise to a constitutional claim." *Santos*, 2026 WL 184266, at *7 (citing *Gerholt v. Wetzel*, 858 F. App'x 32, 34 (3d Cir. 2021) (*per curiam*); then citing *Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (*per curiam*)). Nor does responding to a prisoner's grievance "equate to personal involvement in the underlying events." *Id.* (citing *Higgs v. N.J. Dep't of Corr.*, No. 24-1712, 2024 WL 3811985, at *2 (3d Cir. 2024) (*per curiam*); then citing *Folk v. Prime Care Med.*, 741 F. App'x 47, 51 (3d Cir. 2018) (*per curiam*). In other words, Santos has again failed to state a claim based on how prison officials handled his grievances and any investigations into conduct of which he complained.

20

### H.  Claims Against Supervisory Defendants and Municipal Entities[5]

Santos again brings numerous claims based on supervisory liability and allegedly unconstitutional policies and customs.  The Court previously instructed Santos on the specific standards necessary to plead such claims and dismissed those claims from his initial Complaint because they were predicated on "generalized and conclusory allegations" that Santos had "essentially lump[ed] together."  *Santos*, 2026 WL 184266, at *15-16.  The amended Complaint is pled similarly, seeking to attribute every incident or event to a higher-up, policy, or training failure, without adequate factual support.  Accordingly, for the reasons previously stated, *id.*, these claims fail.

## IV.    CONCLUSION

In sum, after being put on notice of the legal requirements necessary for pleading a claim, Santos has failed to plead a constitutional violation in his Amended Complaint.[6]  The Amended Complaint is unfortunately less well pled than the initial Complaint and does not allege any new facts or context from which the Court could infer that the events at issue might give rise to a plausible constitutional violation.  Accordingly, subject to the two exceptions below, the Court will dismiss Santos's Amended Complaint with prejudice based on a determination that further amendment would be futile.  *Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d

---

[5] To bring claims under § 1983, a plaintiff must show a deprivation committed by a *person* acting under color of state law.  *West*, 487 U.S. at 48 (emphasis added).  As previously explained, neither Berks County Jail nor individual departments of Primecare or BCJ are considered "persons" subject to liability under § 1983, and thus, are not appropriate defendants in this case.  *Santos*, 2026 WL 184266, at *15 n.16 (citing *Beaver v. Union County*, 619 F. App'x 80, 83 (3d Cir. 2015) (*per curiam*); then citing *Ruff v. Health Care Adm'r*, 441 F. App'x 843, 845-46 (3d Cir. 2011) (*per curiam*); then citing *Edwards v. Bucks Cnty. Corr. Facility*, No. 19-4923, 2019 WL 5579486, at *2 (E.D. Pa. Oct. 29, 2019)).

[6] Since the Court has dismissed all of Santos's federal claims, it will dismiss his state claims for lack of subject matter jurisdiction.  28 U.S.C. § 1332(a).

478, 483 (3d Cir. 2019) (concluding that amendment by a *pro se* litigant would be futile when litigant "already had two chances to tell his story").  Santos is given permission to file a second amended complaint, but **only** as to the following claims:  (1) due process claims based on the conditions of cell D-218 where he was held from November 1, 2025, through November 10, 2025, only against any defendant who was personally involved in the alleged constitutional violations; and (2) deliberate indifference to medical needs claims based on the denial of minipres from December 18, 2025 through January 2, 2026, only against any defendant who was personally involved in the alleged constitutional violations.  Santos is directed to limit any second amended complaint to those two instances, to clearly identify the defendants he seeks to sue, to explicitly state the facts showing how each defendant was involved in the constitutional violation at issue, and to avoid repeating allegations about the same events.

An order follows, which provides additional instructions about filing a second amended complaint.[7]

BY THE COURT:

**HON. MIA R. PEREZ**

---

[7] The Court will deny Santos's Motion to Appoint Counsel as premature (ECF No. 11) without prejudice to reassertion after the Court conducts statutory screening of any second amended complaint that he may file. *Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (holding that whether the plaintiff's claim has "some merit in fact and law" is a threshold question in appointing counsel).